UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

BRANNON HUDSON,

    Plaintiff,

vs.

AMERICAN MEDICAL
(CENTRAL), INC.,
a Foreign Profit Corporation,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, BRANNON HUDSON ("Mr. Hudson" or "Plaintiff"), by and through his undersigned counsel, sues the Defendant, AMERICAN MEDICAL (CENTRAL), INC. ("AMCI" or "Defendant") and alleges the following:

1. Plaintiff brings these claims against Defendant for national origin discrimination and retaliation in violation of Title VII ("Title VII") and the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Plaintiff is seeking damages including back pay, front pay, compensatory damages, punitive damages, and his attorneys' fees and costs.

**JURISDICTION AND CONDITIONS PRECEDENT**

2. This Court has original jurisdiction over Plaintiff's Title VII claims as they arise under federal law, pursuant to Title VII, and the actions giving rise to this lawsuit occurred in Miami-Dade County, Florida.

3. This Court has supplemental jurisdiction over Plaintiff's FCRA claims, as

they arise out of the same set of operative facts and circumstances as his Title VII claims.

4. Plaintiff timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the Florida Commission on Human Relations ("FCHR") on or about June 26, 2020.

5. On or about January 26, 2021, Plaintiff received his Notice of Right to Sue from the EEOC.

6. More than one-hundred-and-eighty (180) days have passed since the filing of Plaintiff's FCRA claims, rendering Plaintiff's FCRA claims ripe for filing.

7. Plaintiff timely files this lawsuit, and has complied with all administrative prerequisites.

8. All conditions precedent to this action have been satisfied and/or waived.

9. Defendant is a foreign profit corporation that is registered to do business in the state of Florida, including, among other places, Miami-Dade County, Florida.

## VENUE

10. Venue is proper because Defendant conducts substantial business in Miami-Dade County, Florida, and Plaintiff worked for Defendant in Miami-Dade County, Florida, where the actions at issue took place.

## PARTIES

11. Plaintiff, who is an adult Black/African-American male, is protected by Title VII and the FCRA because:

    a. He suffered discrimination and retaliation by Defendant on the basis of his national origin; and

    b. He suffered an adverse employment action and was subjected to an increasingly hostile work environment based on national origin,

including being terminated for same.

12. Defendant was at all material times an "employer" as defined by Title VII and the FCRA, as it employed in excess of fifteen (15) employees.

## GENERAL ALLEGATIONS

13. Mr. Hudson worked for AMCI as a Pharmacist at AMCI's North Shore Medical Center in Miami, Florida, from August 1, 2014, until his termination on September 20, 2019.

14. In November of 2018, AMCI appointed Eden Lorvinsky, who is Haitian-American, as its new Pharmacy Director.

15. Shortly after Ms. Lorvinsky took over as Pharmacy Director, Ms. Lorvinsky commenced a campaign of targeted discrimination in favor of fellow Haitians and Haitian-Americans, and of targeted discrimination and retaliation against individuals of non-Haitian heritage, including those, such as Plaintiff, of American heritage and national origin.

16. Special leeway was given by Ms. Lorvinsky to individuals of Haitian descent.

17. Despite co-workers having more seniority, for instance, Ms. Lorvinsky catered to individuals of Haitian descent by providing them customized schedules.

18. Despite this leeway, one of the individuals of Haitian descent nevertheless routinely showed up to work over an hour late for her scheduled shifts, without consequence.

19. Another individual of Haitian descent was allowed by Ms. Lorvinsky to leave the pharmacy immediately when the morning shift arrived, whereas Mr. Hudson and others were chastised even when they adhered to their schedules perfectly.

20. Another individual of Haitian descent was catered to with his own customized start time of 4:00 p.m., and was also conveniently kept off the weekend schedule by AMCI with the approval of his fellow Haitian-American, Ms. Lorvinsky.

21. Meanwhile, Ms. Lorvinsky watched Mr. Hudson's attendance and clock-in/clock-out times very closely.

22. Ms. Lorvinsky began papering Mr. Hudson's file with nitpicking "writeups" for so-called "absenteeism" if he clocked in fewer than ten (10) minutes late for the start of a shift.

23. Meanwhile, the much more egregious instances of tardiness committed by individuals of Haitian descent were indulged by Ms. Lorvinsky without rebuke or writeups.

24. Ms. Lorvinsky took personal notes on Mr. Hudson on the occasions when she called Mr. Hudson into her office to berate and verbally abuse him.

25. In the summer of 2019, deeply concerned by the flagrant discrimination and retaliation based on national origin being exercised by Ms. Lorvinsky, Mr. Hudson and several other colleagues petitioned AMCI's North Shore Medical Center to clarify its tardiness and absenteeism policies.

26. In the course of this process, it became clear that Ms. Lorvinsky was erroneously characterizing extremely minor instances of tardiness on behalf of non-Haitian workers as outright "absences."

27. Ms. Lorvinsky was also failing to apply AMCI's own timeclock "grace period" properly.

28. All of these errors by Ms. Lorvinsky went in one direction: in favor of her preferred Haitian-American cohort, and against those of American or other origin, such as Plaintiff.

29. In August of 2019, Mr. Hudson objected directly to Ms. Lorvinsky herself, explaining that AMCI's actions violated, *inter alia*, Title VII and the FCRA, because of her programme of favoritism, discrimination, and retaliation based on national origin.

30. Mr. Hudson's objections constituted protected activity under Title VII and the FCRA.

31. On or about September 11, 2019, Mr. Hudson also met with Carmen Gomez in AMCI's Human Resources Department.

32. At that time, Mr. Hudson objected that AMCI's actions constituted unlawful discrimination based on national origin and violated, *inter alia*, Title VII and the FCRA.

33. Mr. Hudson's objections constituted protected activity under Title VII and the FCRA.

34. Mere days later, on September 20, 2019, AMCI informed Mr. Hudson that it had terminated his employment, effective immediately.

35. Title VII and the FCRA prohibit national origin discrimination in the workplace.

36. Plaintiff's termination constitutes an adverse action as defined by Title VII and the FCRA.

37. Plaintiff suffered an adverse action as a result of his national origin.

38. Defendant's adverse employment action against Mr. Hudson was taken in retaliation for his national origin and in retaliation for Mr. Hudson's objections to the discrimination based on national origin to which Defendant subjected him.

39. Ms. Lorvinsky's remarks and actions demonstrate blatant discrimination based on national origin, and were wholly violative of Title VII and the FCRA.

40. At all material times hereto, Plaintiff was ready, willing and able to perform

his job duties.

41. Defendant does not have a non-discriminatory, non-retaliatory rationale for allowing and participating in the discrimination and termination suffered by Plaintiff.

42. Plaintiff's termination was for pretextual and discriminatory and retaliatory reasons based on Plaintiff's national origin.

43. Plaintiff was treated in a disparate manner from his non-Haitian/Haitian-American counterparts.

44. By reason of the foregoing, Defendant's actions violated Title VII and the FCRA.

45. Plaintiff suffered sufficiently severe and pervasive harassment to create an abusive working environment and, ultimately, termination, because of his national origin.

46. Any reason provided by Defendant for its actions is a pretext and cover-up for illegal discrimination and retaliation.

47. Plaintiff has suffered damages as a result of Defendant's illegal conduct towards him.

48. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I:  DISCRIMINATION IN VIOLATION OF TITLE VII BASED ON NATIONAL ORIGIN**

49. Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth in this Count.

50. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against national origin discrimination under Title VII.

51. The discrimination to which Plaintiff was subjected was based on his national origin.

52. Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g., E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068-69 (11th Cir. 1990).

53. National origin discrimination includes discrimination based on the place of origin of an individual's ancestors, or because the individual possesses the physical, cultural, or linguistic characteristics of a national origin group. 29 C.F.R. § 1606.1; *see also Salas v. Wis. Dep't of Corr.*, 493 F.3d 913 (7th Cir. 2007).

54. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

55. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

56. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

57. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Title VII.

58. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, lost wages, front pay if reinstatement and/or reemployment is not possible,

compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII BASED ON NATIONAL ORIGIN

59. Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth in this Count.

60. The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq*.

61. The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his national origin.

62. Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against based on his national origin.

63. Plaintiff's objections constituted protected activity under Title VII.

64. Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be national origin discrimination.

65. Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

66. Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

67. The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental

8

anguish, loss of enjoyment of life, and other non-pecuniary losses.

68. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

69. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

70. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT III:  DISCRIMINATION IN VIOLATION OF THE FCRA BASED ON NATIONAL ORIGIN

71. Plaintiff realleges and re-adopts the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth in this Count.

72. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against national origin discrimination under the Florida Civil Rights Act, Chapter 760, Florida Statutes.

73. The discrimination to which Plaintiff was subjected was based on his national origin.

74. Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g., E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068-69 (11th Cir. 1990).

75. National origin discrimination includes discrimination based on the place of origin of an individual's ancestors, or because the individual possesses the physical, cultural, or linguistic characteristics of a national origin group. 29 C.F.R. § 1606.1; *see also Salas v. Wis. Dep't of Corr.*, 493 F.3d 913 (7th Cir. 2007).

76. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

77. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

78. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

79. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

80. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT IV:  RETALIATION IN VIOLATION OF THE FCRA BASED ON NATIONAL ORIGIN

81. Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1

through 48 of the Complaint as if fully set forth in this Count.

82. The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Section 760.10(7), Florida Statutes.

83. The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his national origin.

84. Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against based on his national origin.

85. Plaintiff's objections constituted protected activity under the FCRA.

86. Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be national origin discrimination.

87. Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

88. Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

89. The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

90. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

91. Plaintiff is entitled to recover reasonable attorneys' fees and litigation

expenses pursuant to Section 760.11(5), Florida Statutes.

92. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of February, 2021.

By: ___*Noah E. Storch*___
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A
10368 W. State Rd.84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*